IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

**Plaintiff,**

v.

ROLANDO    RIVERA-SOLÍS    [5],
YADIER  SERRANO-CANALES,  a/k/a
"MOTOMBO" [2],

**Defendants.**

Criminal No. 16-547 (FAB)

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is the United States' motion for restitution. (Docket Nos. 1603 and 1604.)[1]  For the reasons set forth below, the United States' motion for restitution is **GRANTED IN PART, DENIED IN PART,** and **HELD IN ABEYANCE IN PART.**

I.   **Background**

On December 6, 2018, a grand jury alleged that Serrano, Rivera, Luis Carmona-Bernacet ("Carmona"), and Alex Burgos-Amaro ("Burgos") used a firearm during and in relation to the murder of Maurice Spagnoletti (count five), in violation of 18 U.S.C. §

---

[1] The United States filed separate motions requesting that the Court order defendants Rolando Rivera-Solís ("Rivera") and Yadiel Serrano-Canales ("Serrano") to compensate victims M.S. and L.S. for the murder of Maurice Spagnoletti ("Spagnoletti").  (Docket Nos. 1603 and 1604.)  With the exception of the defendants' biographical information, the motions are identical.  To avoid redundant citations, the Court refers the motions as single docket entry.

924(j)(1).  (Docket No. 113.)[2]  The parties engaged in extensive
pretrial litigation and plea negotiations.  Ultimately, Carmona,
Serrano and Rivera elected to stand trial.[3]  On May 11, 2024, the
jury convicted Serrano and Rivera on counts one, two, and five of
the fourth-superseding indictment.  (Docket Nos. 1524 and 1527.)[4]
Carmona's, Serrano's, and Rivera's sentencing hearings are
scheduled for June 5, 2024.  (Docket No. 1691.)

The United States moved for restitution against Serrano and
Rivera on November 11, 2023.  (Docket Nos. 1603 and 1604.)  The
Court then ordered Serrano and Rivera to respond no later than
April 5, 2024.  (Docket No. 1669.)  Only Rivera responded,
contending that "no information is provided on how the government
has comes [*sic*] up with the total amount of losses sought in the

---

[2] On June 29, 2021, a grand jury returned a fourth superseding indictment.
(Docket No. 673.)  This indictment charged Serrano, Rivera, Carmona, Burgos,
Alan Lugo-Montalvo ("Lugo"), and Fabiany Alméstica-Monge ("Alméstica") with
conspiracy to possess with intent to distribute controlled substances, in
violation of 21 U.S.C. §§ 846, 860 (count one), and possession of a firearm in
furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)
(count two).  (Docket No. 673.)  The fourth superseding indictment also alleged
that Rivera, Carmona, Serrano, and Burgos used a firearm during and in relation
to the murder of Maurice Spagnoletti (count five), in violation of 18 U.S.C.
§ 924(j)(1).  Id.  Carmona purportedly used a firearm during and in relation
the murders of William Castro-Vidot (count three) and René Cruz-Cuadrado (count
four).  Id.

[3] Burgos moved for severance on March 9, 2023.  (Docket No. 1127.)  The Court
granted this motion.  (Docket No. 1166.)  Burgos pled guilty to counts one and
two on December 27, 2023.  (Docket No. 1619.)  His sentencing hearing is
scheduled for June 17, 2024.  (Docket No. 1695.)

[4] The jury returned a mixed verdict for Carmona:  guilty on counts one, two and
three, but not guilty on counts four and five.  (Docket No. 1523.)  Lugo was
found guilty on count one, but not guilty on count two.  (Docket No. 1525.)
The jury convicted Alméstica on counts one and two.  (Docket No. 1526.)

restitution."   (Docket No. 1689 at p. 6.)   The United States
replied, and Rivera filed a surreply.  (Docket Nos. 1700 and 1706.)

## II.  The Mandatory Victims Restitution Act

Restitution is "a mechanism for making a victim whole by
restoring the monetary equivalent of the losses suffered in the
consequence of the defendant's criminal activity." United States
v. Salas-Fernández, 620 F.3d 45, 48 (1st Cir. 2010).  Federal
courts cannot award restitution without authorization from
Congress.  United States v. Papagno, 629 F.3d 1093, 1096 (D.C.
Cir. 2011).  The judiciary first acquired this authority in 1925,
"when Congress passed the Federal Probation Act and, even after
that, [courts] used the power sparingly." United States v.
Aguirre-González, 597 F.3d 46, 50 (1st Cir. 2010) (citation
omitted).  This initial recalcitrance subsided, however, prompting
courts to impose restitution as "a regular part of a criminal
defendant's sentencing." Cortney E. Lollar, What is Criminal
Restitution?, 100 Iowa L. Rev. 93, 95 (2014).  In 1996, Congress
enacted the Mandatory Victims Restitution Act ("MVRA") to "provide
those who suffer the consequences of crime with some means of
recouping personal and financial losses." United States v. Perry,
360 F.3d 519, 530 (6th Cir. 2004) (quoting H.R. Rep. No. 104-16,
at 5 (1995)); see Dolan v. United States, 560 U.S. 605, 612 (2010)

(noting that Congress passed the MVRA "to ensure that victims of crime receive full restitution").

A defendant convicted of a crime of violence "[shall] make restitution to his victim." United States v. Innarelli, 524 F.3d 286, 292 (1st Cir. 2008) (citing 18 U.S.C. § 3663A(a)). Restitution is imposed "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The Court may "apportion liability among the defendants according to culpability or capacity to pay, or, in the alternative, may make each defendant liable for the full amount of restitution by imposing joint and several liability." United States v. Ochoa, 58 F.4th 556, 561 (1st Cir. 2023) (citation omitted); see 18 U.S.C. § 3664(h). Courts are "not expected to undertake a full-blown trial" to determine the appropriate amount of restitution. United States v. Naphaeng, 906 F.3d 173, 178 (1st Cir. 2018) (citing S. Rep. No. 104-179, at 18 (1995) (noting that restitution proceedings are not to "become fora for the determination of facts and issues better suited to civil [actions]")).

District courts "[resolve] uncertainties with a view toward achieving fairness to the victim." United States v. Alphas, 785 F.3d 775, 787 (1st Cir. 2015) (quotation omitted). The MVRA

analysis is a "fact specific undertaking and will vary case-by-case." In re Akebia Therapeutics, Inc., 981 F.3d 32, 38 (1st Cir. 2020) (citation omitted).  A restitution order need not comply with "standards of scientific precision." United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013); United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997) (holding that an award imposed pursuant to the MVRA requires only a "modicum of reliable evidence")); United States v. González-Calderón, 920 F.3d 83, 85 (1st Cir. 2019) (holding that a restitution order will pass muster if it is "record-based and constitutes a fair appraisal of the victim's actual losses") (citation and internal quotation omitted). Restitution cannot, however, rest on mere "speculation and surmise."  Vaknin, 112 F.3d at 587.  The United States shoulders the burden of establishing the loss amount by a preponderance of the evidence.  United States v. Vega-Martínez, 949 F.3d 43, 54 (1st Cir. 2020); see 18 U.S.C. § 3664(e).

## III. Discussion

The United States seeks $6,177,284.00 in restitution on behalf of Spagnoletti, his widow (M.S.), and surviving daughter (L.S.).  (Docket Nos. 1603 and 1604.)  As a preliminary matter, the Court must determine whether Spagnoletti, M.S., and L.S. are "victims."  See Naphaeng, 906 F.3d at 181 ("The first step in fashioning a supportable restitution order is to identify victims

who have suffered pecuniary losses as a result of the defendant's criminal activity.") (citation omitted).   A "victim" for purposes of the MVRA is:

> A person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered [. . .] In the case of a victim who is [deceased, the] representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under [the MVRA].

18 U.S.C. § 3663A(a). Serrano and Rivera committed one of the most heinous offenses proscribed by criminal law, ending Spagnoletti's life to protect their financial interests.   Accordingly, Spagnoletti is a victim and entitled to restitution.   M.S. and L.S. constitute Spagnoletti's estate, assuming his right to just and prompt restitution as his representatives.   M.S. and L.S. are also victims in their own right, forced to endure financial and emotional hardship because the defendants planned and executed Spagnoletti's murder.   See United States v. Yellow Hawk, Case No. 17-500900, 2020 U.S. Dist. LEXIS 132494, at *4 (D.S.D. July 27, 2020) (holding that a surviving spouse and daughter qualified as victims pursuant to the MVRA, while noting that "[it] is hard to imagine who, aside from the deceased himself, could be more 'directly and proximately harmed' by a murder than the widow and children of the deceased.").

The MVRA mandates that the United States Probation Office ("USPO") shall "include in its presentence report [. . .] information sufficient for the court to" issue a restitution order. 18 U.S.C. § 3664(a). The UPSO complied with this directive, setting forth the victims' request for restitution in Serrano and Rivera's presentence reports. (Docket No. 1575 at pp. 16-17; Docket No. 1601 at pp. 16-17.) M.S. requested $15,794,497.00 based on questions listed in the Victim Impact Statement form for the United States District Court for the District of Puerto Rico (hereinafter, "Victim Impact Statement"). The United States subsequently moved for restitution, calibrating the amount submitted by M.S. to comport with the MVRA. The following table sets forth the amount of restitution requested by the United States. (Docket Nos. 1603 and 1604.)

**[Continue to Next Page]**

Criminal No. 16-547 (FAB)                                                8

| Category | Amount |
|---|---|
| 2008 ES350 Lexus Sedan | $34,124.00 |
| Psychological Treatment and Medication for M.S. and L.S.[5] | $106,010.00 |
| Loss of Spagnoletti's Income | $6,000,000.00 |
| Funeral Expenses | $31,350.00 |
| Loss of Income, Childcare, and Transportation to Attend Criminal Proceedings | $5,850.00 |
| **Total** | $6,177,284.00[6] |

## A. Spagnoletti's Lexus Sedan

Spagnoletti died inside his Lexus sedan, the vehicle which he was driving when Serrano fired multiple rounds from a .40 caliber Smith and Wesson pistol.  (Docket No. 1458 at p. 23.)   Bullets shattered the windows of Spagnoletti's Lexus, causing the vehicle to veer off the expressway.  Id. at p. 7.   He sustained four gunshot wounds to the head.  Id. at p. 55.

Restitution is warranted if the defendants caused "damage to or loss or destruction of property" belonging to the victim of an

---

[5] The amount is based on the following loss amounts and projected expenses: (1) $27,000.00 for psychological treatment administered to L.S.; (2) $9,000.00 for psychological treatment administered to M.S.; (3) $4,550.00 for medication; (4) $49,100.00 for future psychological treatment for L.S.; and (5) $16,360.00 for future psychological treatment for M.S.  (Docket No. 1604 at pp. 4-7.)

[6] The United States claims that the total restitution amount is $6,177,284.00. According to the Court's computation, however, the amount of restitution requested by the United States is $6,177,334.00.

offense.  18 U.S.C. § 3663A(b)(1).  Because Spagnoletti's Lexus was destroyed, both Serrano and Rivera, who ordered the murder, are liable for the cost of the vehicle.  When "return of the property [. . .] is impossible, impracticable, or inadequate," the defendant must pay the greater of "the value of the property on the date of the damage, loss, or destruction," or "the value of the property on the day of sentencing."  Id.

The United States contends that the 2008 ES350 Lexus cost $41,291.00 in 2008, "depreciating 27% after five years, with [a] 5-year resale value of $34,124.00."  (Docket No. 1604 at p. 5) (citing the Kelly Blue Book); see United States v. Davis, Case No. 13-44, 2015 U.S. Dist. LEXIS 59665, at *17 (E.D. Ky. May 6, 2015) (noting that the restitution amount "is expressly based on the truck's Bluebook value, a reliable and objective indicator of the vehicle's fair market value").[7]

Rivera does not dispute the inclusion of Spagnoletti's vehicle in the Court's restitution order. He notes, however, the existence of a discrepancy between the PSR and the United States' motion for restitution.  (Docket No. 1706 at p. 4.)  The PSR provides that Spagnoletti's Lexus is worth $35,000.00.  (Docket

---

[7] See https://www.kbb.com/lexus/es/2008/ (last visited May 7, 2024) (stating that the 2008 Lexus ES sedan "had a starting MSRP of $41,921.00"); https://caredge.com/lexus/es-350/depreciation (last visited May 7, 2024) (stating that a "Lexus ES 350 will depreciate 37% after 5 years and have a 5 year resale value of $34,124.00").

Criminal No. 16-547 (FAB)                                           10

No. 1575 at p. 16.)  The United States requests $34,124.00, $900.00
less than the PSR.  (Docket No. 1604.)  The amount proposed by the
United States inures to Rivera's benefit, however, and is based on
reliable evidence.  Accordingly, the United States' motion for
$34,124.00 in restitution for the loss of Spagnoletti's 2008 ES350
Lexus is **GRANTED**.

   **B. Psychological Treatment and Costs Associated with Attending
      the Proceedings in this Case**

        The United States requests $106,010.00 and $5,850.00 for
psychological treatment and costs associated with attending the
proceedings in this case, respectively. (Docket No. 1604 at pp. 5-
7.)  The MVRA provides in pertinent part that "in a case of offense
resulting in bodily injury to a victim," the defendant shall:

> (A) pay an amount equal to the cost of necessary medical
> and related professional services and devices relating
> to physical, psychiatric, and psychological care,
> including nonmedical care and treatment rendered in
> accordance with a method of healing recognized by the
> law of the place of treatment.
>
> (B) pay the amount equal to the cost of necessary
> physical and occupational therapy and rehabilitation;
> and
>
> (C) reimburse the victim for income lost by such victim
> as a result of such offense.

18 U.S.C. § 3663A(b)(2)(A)-(C).  Moreover, defendants "in any case
[shall] reimburse the victim for lost income and necessary child
care, transportation, and other expenses incurred during

participating in the investigation or prosecution of the offense
or attendance at proceedings related to the offense" (hereinafter,
"participation costs").  18 U.S.C. § 3663A(b)(4).

     The dispositive inquiry concerning psychological treatment
and participation costs is whether the estate of a deceased victim
may recover restitution for expenses incurred by individuals other
than the decedent.  The Court is unaware, and the parties do not
cite, relevant precedent on this issue from the First Circuit Court
of Appeals.

     The Tenth Circuit Court of Appeals has, however, addressed
this issue.  In <u>United States v. Casados</u>, the defendant pled guilty
to second degree murder.  26 F.4th 845, 847 (2022).  The United
States requested $7,724.20 in restitution to reimburse the
decedents' son for airfare to attend the defendant's detention
hearing.  <u>Id.</u>  The United States argued that the MVRA authorized
reimbursement for the "representative of the victim's estate" to
attend court proceedings.  <u>Id.</u>; <u>see</u> 18 U.S.C. § 3663A(a)(2).  The
district court agreed with the United States.  <u>Id.</u> at 484.  The
<u>Casados</u> court reversed this disposition, however, holding that
"the representative's assumption of the victim's rights does not
permit the representative to receive reimbursement of his or her
own expenses because the representative only assumes the victim's
rights – that is, the restitution owed to the victim."  <u>Id.</u> at

851.  The representative does not "[assume] the rights the victim
would have had if the victim were able to exercise them; it simply
permits the representative to assume 'the victim's rights.'"  Id.
Consequently, the district court erred in awarding the decedent's
son restitution "for his own [. . .] travel expenses."  Id. at
852.

The Eight Circuit Court of Appeals reached the same conclusion
in United States v. Wilcox, 487 F.3d 1163 (8th Cir. 2007).  In
Wilcox, the district court awarded restitution to the mother of a
sexual abuse victim for lost wages and the cost of transporting
her daughter to medical appointments.  487 F.3d at 1169.  On
appeal, the Wilcox court noted that the MVRA defines "victim" as
"a person directly and proximately harmed as a result of the
commission of an offense."  Id. at 1176 (citing 18 U.S.C. §
3663A(a)(2)).  The subsections concerning lost wages mention a
"specific victim," however, referring to "the victim who suffered
bodily injury."  Id.  Accordingly, a legal guardian cannot
"substitute her own losses for those of the victim."  Id. at 1777.
The Eighth Circuit Court of Appeals held that "[there] may be good
policy reasons for allowing a court to order reimbursement of a
parent's lost income – either by deeming some portion of the
parent's income to be income of the child, or by recognizing the
parent as a separate victim who may be reimbursed when a dependent

suffers bodily injury – but we do not think the present statutory language encompasses that policy." Id. at 1178-80.  The Wilcox court did, however, affirm the award of restitution for transporting the victim of sexual abuse to medical appointments.

M.S. and L.S. are victims, but their entitlement to restitution is limited.  The weight of authority establishes that restitution is available only "for costs incurred by the victim who suffered bodily injury – not costs incurred by the representative on their own behalf." Yellow Hawk, 2020 U.S. Dist. LEXIS 132494, at *2 (holding that the surviving spouse in a murder prosecution qualified as a MRVA victim in her own right, but denying her restitution request for therapy and lost wages because "[these] categories of cost may be granted only to victims who suffered bodily injury"); United States v. Patton, 651 Fed. App'x 423, 427 (6th Cir. 2016) ("Because the victim's spouses suffered no bodily injury, the district court erred in awarding them lost wages under the MVRA."); United States v. Harwood, 853 F. Supp. 2d 1035, 1063 (D.N.M. 2012) (holding that the "plain language [of the MVRA [. . .] confines the scope of restitution for psychological services to when the victim has suffered a 'bodily injury'"); cf United States v. Callis, Case No. 03-16, 2015 U.S. Dist. LEXIS 156018, at *1 (E.D. Va. Nov. 9, 2016) ("Because [the Trafficking Victims Protection Act, a statute similar to the MVRA,] focuses on

losses incurred by or on behalf of the actual victim of the crime,
the Court finds that the statute does not permit the mother of a
minor victim of sexual crimes to recover for the cost of her – not
the minor victim's – counseling.").

The expenses incurred by M.S. and L.S. for psychological
treatment and participation costs fall within the same provisions
as before the Yellow Hawk and Casados courts.  2020 U.S. Dist.
LEXIS 132494, at *2 (denying restitution for therapy pursuant to
18 U.S.C. § 3663A(b)(2)(A); 26 F.4th at 853 (denying restitution
for transportation expenses pursuant to 18 U.S.C. § 3663(b)(4)).
Like the surviving family members in these decisions, M.S. and
L.S. have not sustained bodily injuries as a result of the
defendants' offense.   The Court does not doubt that M.S. and L.S.
have suffered tremendously.   The abrupt and harrowing loss of
Spagnoletti deprived M.S. and L.S. of a husband and father.   The
restitution award must, however, conform to the governing statute.
Accordingly, the United States' restitution request for
psychological treatment and participation costs is **DENIED**.

## C. The Loss of Spagnoletti's Income

The United States maintains that Serrano and Rivera are liable
for the "loss of Spagnoletti's income."   (Docket No. 1604 at p.
6.)   The Second, Eighth, Ninth and Tenth Circuit Courts of Appeals
have held that the MVRA requires defendants to pay for future

income lost as a result of the underlying offense.  See United
States v. Messina, 806 F.3d 55, 70 (2d Cir. 2015) ("[We] construe
the lost-income provision of the MVRA, 18 U.S.C. § 3663A(b)(2)(C),
to apply to any victim of an offense resulting in bodily injury,
whether the victim survives the injury or dies therefrom.  We
further construe the lost-income provision to mandate restitution
for non-speculative future income lost as a result of the
defendant's offense."); United States v. Oslund, 453 F.3d 1048,
1063 (8th Cir. 2006) ("Because future income is income that is
lost to the victim as a direct result of the crime, the plain
language of the statute leads to the conclusion that lost future
income can be included in a restitution order."); United States v.
Cienfuegos, 462 F.3d 1160, 1161 (9th Cir. 2006) (holding that
"restitution for future lost income may be ordered under the MVRA
so long as it is not based upon speculation"); United States v.
Serawop, 505 F.3d 1112, 1125 (10th Cir. 2007) (holding that "an
award of lost future income for a deceased infant is not precluded
by the MVRA").  The Court concurs in this general proposition,
holding that Serrano and Rivera are liable for the loss of
Spagnoletti's future income.

       The amount of Spagnoletti's lost income is ambiguous,
obscured by conflicting allegations in the Victim Impact
Statement, PSR, and the United States' motion for restitution.  In

Criminal No. 16-547 (FAB)                                        16

the Victim Impact Statement, M.S. claimed that Spagnoletti lost "$9,313,397.00" in "[future] income and pension." The PSR reiterates this allegation, listing "$9,319,397.00" as "loss of husband's salary." (Docket No. 1601 at p. 16.) The Victim Impact Statement and PSR do not, however, differentiate future lost income from Spagnoletti's pension fund.

The United States avers that Spagnoletti's "yearly income was $400,000 per year." (Docket No. 1604 at p. 6.) Spagnoletti was 57 years old on June 15, 2011, the date of his murder. Id. Based on Social Security Administration and Internal Revenue Service life expectancy standards, "Spagnoletti would have probably retired at 72 years old, therefore, a conservative estimate of the loss income is calculated at $6,000,000.00." Id. (15 additional years of income multiplied by an annual salary of $400,000.00 is $6,000,000.00).

This calculation is based on a conclusory statement. The United States purports that Spagnoletti earned "$400,000.00 per year," but fails to cite the source of this information. The First Circuit Court of Appeals has held that "[each] component of a restitution order must correspond to some reliable evidence; such components cannot rest on an evidentiary void." United States v. Cardozo, 68 F.4th 725, 741 (1st Cir. 2023) (holding that the district court erred by ordering the defendant to pay $4,308.93 in

restitution, an amount "not supported by anything in the record
[and] plucked out of thin air").  Victim Impact Statements and
presentence reports are reliable sources, often serving as the
factual basis for restitution orders.  See, e.g., Sánchez-
Maldonado, 737 F.3d at 828 ("[The] district court's order relied
on the $24,000 loss amount quoted in the PSI Report.  That
information came straight from the mouth of the victim [. . .] we
cannot fault the district court for its acceptance of the loss-
amount figure").

     The Victim Impact Statement and PSR before this Court are
devoid of any reference to an annual salary of $400,000.00.
Because the United States failed to provide the relevant citations,
the Court cannot assess whether restitution in the amount of
$6,000,000.00 is appropriate.  See United States v. Sharma, 703
F.3d 318, 324 n.21 (5th Cir. 2012) (holding that victim impact
statements are generally reliable, "[but] if a dispute arises, the
court must determine by a preponderance of the evidence whether
the statements actually support the quantum of an award of
restitution [. . .] unquestioning reliance on the statements, first
by Probation and second by the sentencing court" was erroneous).

     Because additional information is required, the United
States' motion for $6,000,000.00 in restitution for lost income is
**HELD IN ABEYANCE.**  The United States **SHALL** disclose the factual

basis for alleging that Spagnoletti earned an annual income of $400,000.00 at the time of his death **no later than May 17, 2024.** Serrano and Rivera may respond to this disclosure **no later than May 24, 2024.**

### D. Funeral Expenses

The United States requests $31,350.00 in restitution for funeral expenses. (Docket No. 1604 at p. 7.) "[In] the case of an offense resulting in bodily injury that results in the death of the victim, [the defendants shall] pay the amount equal to the cost of necessary funeral and related services." 18 U.S.C. § 3663A(b)(3). Because Spagnoletti died as a result of Serrano and Rivera's offense, M.S. and L.S. are entitled to restitution for the appurtenant funeral expenses.

According to the Victim Impact Statement and PSR, M.S. incurred the following expenses: casket ($4,000.00), funeral ($8,000.00), burial ($8,800.00), repass ($3,750.00), and church memorial ($3,000.00). These expenses total $27,550.00. The United States asserts, however, that "M.S. detailed funeral expenses incurred in the amount of $31,350.00 in her Victim Impact Statement." (Docket No. 1604 at p. 7.) The Court cannot decipher whether the United States calculated the funeral expenses incorrectly, or whether the $31,350.00 amount is based on information withheld from the Court and defendants. Because

additional information is required, the United States' motion for $31,350.00 in restitution for funeral and related services is also **HELD IN ABEYANCE.**  The United States **SHALL** disclose the factual basis for alleging that M.S. paid $31,350.00 for Spagnoletti's funeral and related services **no later than May 17, 2024.** Serrano and Rivera may respond to this disclosure **no later than May 24, 2024.**

## IV.  Conclusion

For the reasons set forth above, the United States' motion for $34,124.00 in restitution for the loss of Spagnoletti's 2008 ES350 Lexus is **GRANTED.**

The United States' restitution request for psychological treatment, and costs associated with attending the proceedings in this case is **DENIED.**

The United States' motion for $6,000,000.00 in restitution for lost income is **HELD IN ABEYANCE.**  The United States **SHALL** disclose the factual basis for alleging that Spagnoletti earned an annual income of $400,000.00 at the time of his death **no later than May 17, 2024.** Serrano and Rivera may respond to this disclosure **no later than May 24, 2024.**

The United States' motion for $31,350.00 in restitution for funeral and related services is also **HELD IN ABEYANCE.**  The United States **SHALL** disclose the factual basis for alleging that M.S.

Criminal No. 16-547 (FAB)                                          20

paid $31,350.00 for Spagnoletti's funeral and related services **no later than May 17, 2024.** Serrano and Rivera may respond to this disclosure **no later than May 24, 2024.**

Serrano and Rivera's sentencing hearings are set for June 5, 2024 at 9:00 AM in the Old San Juan Courtroom before the undersigned.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 8, 2024.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE